## GROUP NO. 2 OIL CORPORATION v. JONES, Collector of Internal Revenue.

Civ. No. 3363.

United States District Court
W. D. Oklahoma.
Jan. 10, 1949.

610

Burney Braly, of Fort Worth, Tex., for plaintiff.

Robert E. Shelton, U. S. Atty., of Oklahoma City, Okl., for defendant.

CHANDLER, District Judge.

In the foregoing action, tried upon the facts, without a jury, the court finds the facts specially as follows:

1. Plaintiff was incorporated on October 22, 1921, under the laws of the State of Delaware, and was authorized to issue 485,000 shares of stock of a par value of $1.00 per share. Its entire capital stock was subscribed for by, and issued to, Texon Oil & Land Company, a Delaware corporation, hereinafter sometimes called "Texon," in consideration for which Texon

(a) transferred and assigned to plaintiff certain permits issued by the State of Texas to prospect for and develop oil and natural gas (called "Oil and Gas Permits"), insofar as such permits covered, in the aggregate, sixteen sections or surveys of land, containing 640 acres each, situated in Reagan County, Texas, appropriated to the State University Fund and generally referred to as "University Lands," and

(b) entered into an agreement with plaintiff whereby Texon bound and obligated itself, at its sole cost and expense, to drill and complete for plaintiff a well for oil and gas, to a depth of 4000 feet, on some one of said sections of land at a location to be mutually agreed upon. Said well is hereinafter referred to as the "first well" or "Well No. 1."

The cost of said permits to Texon Oil & Land Company was $1,100.45, and they were transferred to and received by plaintiff in a non-taxable transaction.

2. On or about January 25, 1925, Texon completed and turned over to plaintiff the well which it had agreed and obligated itself to drill and complete as a part of the consideration for plaintiff's entire capital stock. It employed one Carl G. Cromwell as the contractor actually to perform such drilling operations. It did not produce oil or gas and was plugged and abandoned upon completion. The cost to the contractor of drilling and completing said well was $50,359.20. At the time plaintiff was organized and its capital stock was issued, as aforesaid (October 1921), the value to it of the right under the said contract with Texon to have said well drilled at Texon's expense, and without cost to plaintiff, was $50,359.20.

3. During the year 1924 Texon agreed to drill and equip, or cause to be drilled and equipped, for plaintiff, two additional wells for oil and gas on said lands, at locations to be mutually agreed upon, for which plaintiff agreed to pay a total of $200,000.00, or $100,000.00 for each well. Texon caused the two additional wells (hereinafter referred to as "second and third wells" or as "Wells Nos. 2 and 3") to be drilled and completed by the said Carl G. Cromwell during the year 1925. In subsequent years, plaintiff paid Texon the entire contract price of $200,000.00 for the drilling of the said two additional wells. Both wells were found to be dry and were plugged and abandoned. Plaintiff recovered salvage materials therefrom of the value of $13,427.38. The net cost to plaintiff of said two additional wells was $186,572.62.

4. The oil and gas permits covering the sixteen sections transferred to plaintiff by Texon were duly converted into oil and gas leases pursuant to the statutes and the laws of the State of Texas after oil was discovered on other lands included in such permits. Said leases were for terms of ten years and were renewable for suc-

cessive terms of ten years, so long as production continued. Each of said leases was, at the end of its ten-year term, renewed for another ten-year term, and all were maintained in force and effect until released and surrendered.

5. In the calendar year 1938, plaintiff surrendered and released, and wrote off of its books, such renewal oil and gas leases, only insofar as they covered and affected five sections of said lands, which included Section 22 upon which Well No. 1 was located; and in the year 1940 it surrendered and released, and wrote off of its books, such renewal oil and gas leases, insofar as they covered the remaining eleven sections out of said sixteen sections of said lands, which included the other two wells in issue, all of which had been charged off and abandoned in the fiscal year ending June 30, 1925.

6. In its tax return for the fiscal year ended June 30, 1925, plaintiff claimed the cost of drilling the said three wells as an expense, an option which it had the right to exercise. This election was made on the first return after the drilling of the wells was completed and the deductions were allowed by the Commissioner of Internal Revenue as provided by Article 225 of Regulation 65, then in full force and effect.

7. The taxpayer had no income, did not report income, nor did it pay income taxes for its fiscal year ending June 30, 1925.

8. On its income tax return for the year 1940, plaintiff deducted the sum of $214,734.92, although the cost of the three wells had previously been charged off in 1925 representing the part attributable to the leases surrenderd in that year of the cost to Texon of all the permits originally acquired by plaintiff from Texon, plus the cost of the three wells drilled for it by Texon. Of the amount so deducted, the Commissioner of Internal Revenue allowed plaintiff only the sum of $687.77. In disallowing such deduction against plaintiff's 1940 income, the Commissioner of Internal Revenue held that the cost of drilling said three wells was a deductible expense in plaintiff's fiscal year ended June 30, 1925, and, further, that the leases in question had been determined to be worthless prior to the taxable year 1940, although it was agreed at the trial of the case and the court finds that all of the leases in question had not become worthless prior to the taxable year 1940.

9. The Commissioner of Internal Revenue having disallowed said deduction for abandoned leases thereupon determined that plaintiff had earned a normal tax net income during the calendar year 1940 of $33,648.37, and assessed a tax deficiency against plaintiff for said year in the amount of $7,441.25, which plaintiff paid, with interest, as alleged in its complaint.

10. In its fiscal year ended March 31, 1927, plaintiff received income in the form of 544 shares of common stock of Reagan County Purchasing Company, Inc., of the value of $244.31 per share, which constituted income taxable to plaintiff in said fiscal year, but the said value was not reported by it in its return of income for said year.

11. On its income tax return for said year plaintiff reported receipt of said shares, but reported only $1.00 as the income represented thereby.

12. These shares of stock in the Reagan County Purchasing Company, Inc., had been issued to the plaintiff-corporation, Big Lake Oil Company, Texon Oil and Gas Company, and Group No. 1 Oil Corporation in connection with an agreement entered into in 1924 with the Marland Oil Company. The stock had been placed in escrow when issued to be distributed upon fulfillment of certain conditions which were carried out and accordingly the stock was distributed in the year 1927. As a result of reporting the stock at a value of $1.00, a net loss of $39,133.97 was shown in the return of income of the plaintiff for the year 1927. Because of said loss shown on its return for said year no examination of the return or books and records of the plaintiff was made by the Commissioner of Internal Revenue and he was not officially or pointedly informed of the affairs of the said plaintiff for said year. However, the government agent examining the books and records of the other two named companies came into possession of knowledge

from the books and records of said corporations to the effect that plaintiff corporation had acquired the 544 shares of stock here involved at the same time and in the same manner as had said corporations.

13. In the year 1928 the Commissioner of Internal Revenue did make an examination of the returns and books and records of plaintiff's affiliate corporations, Group No. 1 Oil Corporation and Texon Oil and Land Company. The report by these companies of the receipt of shares of Reagan County Purchasing Company stock at a nominal value of $1.00 was challenged by the Commissioner of Internal Revenue and its fair market value on receipt in 1927 determined at $244.00 per share, which was later affirmed by the Courts. This plaintiff did not inform the Commissioner of Internal Revenue that the same situation existed with respect to its income for the year 1927, nor did it in any manner advise the Commissioner that it erred in reporting the stock at a nominal value of $1.00 in 1927, until the filing of its return of income in 1941.

14. The plaintiff has failed to establish by a fair preponderance of the evidence that it suffered a net loss during the calendar year 1940, and that it did not in that year earn normal tax net income in the amount of $33,648.37 as determined by the Commissioner of Internal Revenue.

15. No tax deficiency was assessed against plaintiff for the fiscal year ended March 31, 1927. The revenue agent who made the examination and audit of the books and records of Texon Oil & Land Company of Texas and Group No. 1 Oil Corporation did not make an examination of, or report on, the income tax return and the books and records of plaintiff for the fiscal year ended March 31, 1927, and the Commissioner was not informed of the affairs of plaintiff other than through its return of income as filed by it and the knowledge gained by its agent in examining the other two above-named corporations.

16. In its taxable year 1941 the plaintiff sold 250 shares of the stock in Reagan County Purchasing Company, Inc., which it had received in 1927 for a total of $3750.00, and reported a loss thereon in its income tax return for such year amounting to $57,328.68, arrived at by using the true cost basis, $244.31 per share, or $61,078.68, when in the year 1927 it had been given a nominal value of $1.00.

17. Upon and after an examination and audit of plaintiff's 1941 tax return and its books and records, the Commissioner of Internal Revenue disallowed said deduction of $57,328.68 claimed by plaintiff as loss upon the sale of said shares of stock, holding that plaintiff's basis for such shares was zero, and as a result of the disallowance of said item assessed a normal income tax deficiency against plaintiff amounting to $16,790.09; and, as the result of the disallowance of said item and of the disallowance of plaintiff's deduction for surrendered oil and gas leases on its 1940 income tax return as hereinabove found, assessed an excess profits tax deficiency against plaintiff amounting to $9,430.52, which assessments, with interest thereon, plaintiff paid to the defendant herein, as alleged in its complaint.

18. Plaintiff seasonably filed claims for refund of the taxes and interest paid by it on the deficiency assessments of income taxes assessed against it for the years 1940 and 1941, and the excess profits tax for the year 1941, as set forth above, and the Commissioner of Internal Revenue formally disallowed and rejected said claims on May 27, 1946.

19. The plaintiff has failed to establish by a fair preponderance of the evidence that it suffered a net loss during the calendar year 1941, and that it did not during the calendar year 1941 earn normal and surtax net income in the amount of $54,968.06 and excess profits tax net income in the amount of $60,547.83 as determined by the Commissioner of Internal Revenue.

20. That the plaintiff by its conduct, elections and treatment of controverted items in past years is estopped from questioning the treatment accorded the items in question by the Commissioner of Internal Revenue in his final determinations of plaintiff's tax liability for the calendar years 1940 and 1941.

21. That the plaintiff by its conduct, elections and treatment of the controverted

items for the year 1941, particularly with respect to 544 shares of Reagan County Purchasing Company stock received by it in the year 1927, is estopped from questioning the treatment accorded the item in question by the Commissioner of Internal Revenue in his final determination of tax liability for the year 1941; and in any event the Commissioner of Internal Revenue is entitled to recoupment and set off for the full amount of the tax which he would have been entitled to exact from the plaintiff in the year 1927, had plaintiff properly reported and paid a tax thereon in the said year 1927.

From all of which the Court makes the following:

### Conclusions of Law

1. This court has jurisdiction of this suit on grounds alleged in the complaint.

2. The plaintiff's claims for refund were seasonably filed and sufficiently stated and presented the grounds relied on by plaintiff for relief in this suit.

3. Under the law and regulations then in force, the plaintiff had the right and or option to charge to expense the cost of Wells Nos. 1, 2, and 3 drilled by or for it in the year 1924 and found to be dry holes which were plugged and abandoned. Having once exercised the option to expense, the drilling of said dry wells in the succeeding year, plaintiff cannot in a later year capitalize the said cost on its books and records.

4. Plaintiff is precluded from claiming the loss alleged by it in 1940 as a result of the surrender of the oil and gas leases which it released in that year by reason of having elected in the fiscal year ended June 30, 1925 to expense the cost of Wells Nos. 1, 2 and 3 drilled for it during the year 1924

5. The gain to plaintiff on receipt of the shares of stock in Reagan County Purchasing Company, Inc., in 1927 was $244.31 per share. This gain was not reported in its return of income for said year and no tax was paid thereon. Upon the sale in 1941 of 250 shares of stock in said company by plaintiff, the Commissioner of Internal Revenue on account of the prior action of the plaintiff in 1927, prop-erly determined that a zero basis should be used by plaintiff in determining the gain on the sale in 1941. By reason of its said action in the prior year, plaintiff is precluded under the doctrines of estoppel and recoupment from using the correct cost basis of such shares in order to establish and claim a loss for income tax purposes upon the sale thereof in 1941.

6. That the taxes herein sought to be recovered for the years 1940 and 1941 were legally assessed and collected.

7. That the defendant is entitled to judgment for dismissal of this action and for his costs.

8. That judgment be entered in favor of the defendant.